'Williams, J.
The plaintiff in error brought its suit against Miller in the common pleas court, to recover on two notes — one for $663, in the words and figures following:
“$663. Bated at Columbus, O., on July 17, 1879.
“ On or before the first day of October, 1880, for value received, we or either of us, of Marble Cliff Post-office, County of Franklin, State of Ohio, promise to pay The Aultman St Taylor Company, an incorporated company, or order, six hundred and sixty-three dollars, payable and negotiable without off-set, at the office of the First National Bank, Columbus, Ohio, with interest at eight per cent, per annum from date, until paid, without relief from the appraisement, stay or exemption laws. We also expressly covenant and agree that the ownership and title to the Aultman St Taylor threshing machinery and engine, for which this note is given, shall remain in the Aultman St Taylor Company until this note is fully paid. The drawees and endorsees severally waive presentment for payment, protest and notice of protest and non-payment of this note. If this note is paid in full when due, a discount of thirty-nine and 78-100 dollars is to be made from the amount then due.
“ J. H. Miller.”
The other note is in form exactly the same as this, for the sum of $642.
The plaintiff alleges that these notes were endorsed and delivered to it by the payee therein named before maturity for *97 value, and that the amounts thereof are due to it and unpaid.
The defendant’s answer is in substance : 1. Denies that the notes were endorsed for value, or before due, or in the usual course of business, or in good faith. 2. Avers that the plaintiff took them with notice that they were given for certain machinery, which was defective and not as warranted, as hereinafter set forth.
Then by way of cross-petition against the Aultman & Taylor Company, the answer states:
1. That the notes were given for a threshing machine and engine, purchased by Miller from the payee, which warranted the engine to be of twelve-horse power, and capable of threshing eight hundred to ten hundred bushels of wheat per day, and would not require greater steam pressure than eighty-five pounds.
2. That this warranty was broken in this:
(a.) That eighty-five pounds of steam would not give sufficient power for threshing.
(6.) The machine could not thresh more than 400 bushels of wheat per day, and,
(c.) The engine was not more than a ten-horse power engine.
3. That'the defendant has been damaged in the sum of $2,000, and prays to be allowed to counter-claim against the notes to their amount, and have judgment against the Aultman & Taylor Company for the difference.
On his motion the Aultman & Taylor Company was ordered to be made a party.
A summons was issued to Richland county, and there served.
That company filed its motion to quash the summons and service, and to be dismissed, because the court had no jurisdiction,“which being overruled and exceptions duly taken, it then answered the cross-petition of Miller:
1. Denying the averments thereof, and,
2. Alleging that the only warranty given was in writing constituting part of the order signed by Miller for the machinery, and which is fully set out and seems to relate- to the separator, or threshing machinery.
*98 The plaintiff filed a reply to the answer and cross-petition of Miller, and Miller in turn replied to the answer of the company, controverting the varions allegations thereof.
The case was tried to a jury, which returned a verdict as follows:
“We, the jury, being duly empanelled and sworn, find in favor of the plaintiff on the causes of action contained in the petition herein, and we do assess the amount due the plaintiff on said causes of action at the sum of $1774.80, and we do find in favor of said defendant, J. H. Miller, on the cause of action set forth in his cross-petition herein, and we do assess his damages on his cross-petition at the sum of $1,020, and, deducting the latter sum from the former, we, the jury, do find on the issues joined on the pleadings in favor of said plaintiff, the Mansfield Savings Bank, against said J. H. Miller, and do assess the amount due the said plaintiff, from the said J. H. Miller, at $754.80.”
Motions for new trials were filed, both by the plaintiff and the Aultman & Taylor Company, which were overruled, exceptions duly taken, and a judgment rendered on the verdict in favor of plaintiff against Miller, for the amount, and costs, and also a judgment rendered in favor of Miller against the Aultman & Taylor Company for costs on the issues between them.
A bill of exceptions was taken embodying all the testimony and charge of the court, and the plaintiff filed its petition in error in this court to reverse the judgment, and the Aultman & Taylor Company filed a cross-petition in error to reverse the judgment against it.
The errors assigned in the petition in error, so far as they are material to the plaintiff in error, or can be prejudicial to him, relate:
1. To the charge of the court to the-jury,' and,
2. To the sufficiency of the evidence to sustain the judgment.
First — The court charged the jury as follows :
“ The written instruments upon which the bank founds its two causes of action, are non-negotiable, and therefore the plaintiff, although it may have aequire'd thembefore due, took them subject to all defenses and equities which *99 then existed in favor of said J. H. Miller, as against said instruments. Therefore, if you shall find for the defendant, J. H. Miller, as against his co-defendant, on the cause of action contained in said Miller’s cross-petition, the damages you may allow him thereon are available as a counter-claim as against said instruments in the hands of the plaintiff.”
This was specifically excepted to by plaintiff. There was no modification or qualification of this proposition in any other part of the charge — on the contrary the principle was again substantially stated to the jury in the direction given as to the verdict which was again excepted to by plaintiff.
The question is directly presented, then, whether the two notes were, in the hands of a bona fide holder — that is, an endorsee before due for value in due course of business, and without notice — subject to all defenses and equities of the maker against them.
It is claimed by the plaintiff in error that they are not. That they are negotiable, promissory notes — while the defendant claims that they are special contracts, and are rendered nonnegotiable by the following provisions therein, viz.: 1, the clause relating to the discount; 2, the clause relating to the ownership and title of the machine.
Our statutes furnish no assistance in the solution of this question. See. 3171 provides : “ All bonds, promissory notes, bills of exchange, foreign and inland, and checks, for a sum certain, and payable to any person or order, or to any person or assigns, shall be negotiable by indorsement thereon, and all such instruments payable to a person or bearer, shall be negotiable by delivery, so as to absolutely transfer and vest the property thereof in each and every indorsee or holder successively.” Sec. 3174: “ If any such bond, note, bill of exchange, or check, be indorsed or delivered on or before the day on which the same is made payable, and the indorsee institute an action thereon, the defendant may prove the payment of any money thereon, before the same was indorsed or delivered to the plaintiff, on proving that the plaintiff had notice of the payment before such indorsement was made and accepted, or such delivery made.”
We are remitted to the law independent of the statute for what constitutes a promissory note.
*100 It is admitted by counsel on both sides that the time of payment must be certain, also the amount and fact of payment If the amount or fact of payment is conditional, the instrument is not a promissory note, whatever else itmav be.
A number of cases are cited to show that a stipulation for the payment of reasonable attorney’s fees and in some instances a specified per cent, as attorney’s fees, in addition to the amount of the note, renders tbe amount uncertain, and thus destroys the character of the instrument as a note. And it is claimed by analogy that the provisions in the two notes sued on, “ If this note is paid in full when due, a discount of $39.78 is to be made from the amount then due,” has the like effect.
We do not think so.
The reason for holding the amount of a note containing a stipulation for attorney fees uncertain, is clearly stated by Sharswood, J., in Wood v. North et al., 84 Pa., St., 407. He says: “ It is a mistake to suppose that if the note was unpaid at maturity, the five per cent, would .be payable to the holder. It must go into the hands of an attorney for collection. The parties cannot arbitratily determine the amount. It must be only what is a reasonable compensation. And what is reasonable must be determined by the verdict of a jury, and therefore the amount of payment is not with certainty fixed by the note.”
This reason does not apply to the clause in question.
The amount of payment at maturity is absolutely certain. What disposition the payee shall make of the money is immaterial. There is no uncertainty in the amount in any event.
The presumption is that parties will perform their obligations rather than break them, and therefore in the commercial world — if this note should be offered for negotiation, the amount at time of payment would be known with certainty.
While the note is undishonored and has any standing in the commercial world the amount is definitely fixed. If any uncertai nty could in any way arise, it is only when it becomes dishonored and ceases to have any standing as commercial paper.
The other clause in the note presents a much more difficult and doubtful question. The stipulation is: 1:We also expressly covenant and agree that the ownership and title to the *101 Auitman & .Taylor threshing machinery and engine, , for-which this note is given, shall'remain in the Auitman & Taylor Company until this note is fully paid.”
A number of cases have been cited by counsel, in which instruments, otherwise in the form of notes, containing somewhat similar clauses, have been held not negotiable, and some^ in which the contrary has been held.
Of the former are: 21 Mich., 254; 26 Kansas, 310; 25 Minn., 530; 45 Mich., 406; 134 Mass., 245.
Of the latter are: 5 Duer., 207; 64 Maine, 37; 54 Ind. R., 164; 3 Neb., 10; 10 Neb., 284; 7 Metcalf, 589; 53 Iowa, 184.
If the decision of the question under consideration depended) alone upon this clause in the note, in this somewhat conflicting state of the authorities, I should feel strongly inclined to»follow the case of 134 Mass., 245, as containing the sounder-reason and more substantial ground for the conclusion reached,,, and also because the note in that case is perhaps in this particular more nearly like those under consideration.
But the note contains another stipulation, viz.: “ payable and negotiable without off-set, at the office of the First National Bank, Columbus, Ohio.”
It is a fundamental rule of construction both of statutes and written instruments, that regard must be had to the whole statute, or instrument, and, if possible, effect be given to all their provisions.
It is apparent, I think, that by the term “ off-set,” as used in these notes, is not meant matters of set-off simply in the strict legal signification of the latter term — but it is rather used in the sense of deduction or diminution.
The fact that a note stipulates that it shall be payable and negotiable at a particular bank, does not restrict its negotiability; but with such stipulation it may be negotiated anywhere.
In legal effect then, this stipulation in each of these notes; is equivalent to the expression: I authorize this note to be-negotiated, and when negotiated it shall be payable without deduction or diminution.
*102 Taking the whole note together, this is its meaning.
Now conceding that this is not strictly a negotiable promissory note, yet to bold that a person who purchases it for value "without notice holds it subject to all off-sets, defences and deductions in favor of the maker, would be to hold that he could mot by contract bind himself to the contrary.
If A. held a non-negotiable or past due note on B., and desired to sell it to C., and C. should ask B. whether it was all right and free from off-sets, and B. should say it was, on the .faith of which C. should purchase, I apprehend it would not be claimed after that, that-B. could set up any transaction between him and A. as a defense.
This is in substance what Miller says on the face of this paper to whomsoever it may be presented for discount.
He invites negotiation by stipulating that the note shall be negotiable and payable in full and without deduction.
He could have done so no more specifically if he had written a letter to the bank when the note was presented, stating he authorized the note to be negotiated, and it should be paid without deduction. While this note may not, therefore, be a “ carrier without luggage,” to use the language of some of the decided cases, a part of the luggage it carries is a written passport and continuing letter of credit recommending its negotiation and waiving all deduction in that event.
. It would be a fraudpn persons so giving credit to Miller on his own recommendation, authority and waiver accompanying the note, to permit him to defeat it in the hands of such holder.
Good faith in the observance of his express stipulations in the notes would deny him this right. See Daniels Neg. Inst., sec. 107.
We think the court below erred in disregarding this stipulation in the notes and charging the jury that the bank held it subject to all defenses of Miller notwithstanding it bought it in good faith before due and for full value, and this conclusion is supported by the case of Mandeville v. The Union Bank, 9 Cranch, 9, and also 1 Daniels Neg. Inst., sec. 107.
.Second — As to the verdict being against the weight of the •evidence.
J. T. Holmes, for plaintiff in error and The Aultman & Taylor Company.
J. Q. Richards and J. D. Sullivan, for Miller.
It appears from the bill of exceptions that it contains áll the evidence.
We do not hesitate to say that the verdict was clearly against the weight of the evidence.
Third — The question arising on the cross-petition of the Aultman & Taylor Company, is whether the judgment rendered against it was erroneous.
The only judgment rendered against it is one for costs, and it is not easy to see on what ground this could be done.
That company was made a party simply because it was alleged the counter-claim of Miller exceeded the amount of the notes.
The company successfully defended against this claim. There is no verdict or finding against it — nor any foundation for the judgment.
The judgments are therefore reversed.